UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN ALBERTO FERNANDEZ,<br><br>Defendant. | Case No. 8:14-CR-00008-JLS-2<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. 79)** |

Defendant seeks release or reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which is commonly referred to as the compassionate release statute. As set forth herein, the Court GRANTS Defendant's Motion for Compassionate Release and ORDERS his release forthwith. (Doc. 79.)

## I.   Background

On January 8, 2014, Defendant was charged on three counts of drug-distribution charges. On November 21, 2014, Defendant pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. (Doc. 41.) On August 28, 2015, the Court sentenced him to 151 months imprisonment to be followed by 5 years of supervised release. (Doc. 61 (Judgment and Commitment Order).) Defendant has been in custody since his arrest in January 2014, about 79 months.

Defendant is a young man (age 36), whose current health is very poor. Defendant is morbidly obese. (Ex. A at 5.)[1] Diagnosed with diabetes before his sentencing (*see* PSR ¶ 81), his disease has since progressed and worsened significantly, and he is experiencing severe complications. Defendant's diabetes appears to be uncontrolled. For example, Defendant's fasting blood glucose level on June 24, 2020 was 218, more than twice the normal level of under 100. (Ex. A at 10.) Moreover, on March 7, 2020, Defendant's hemoglobin A1c, a measure of the body's average blood glucose level for the two to three months before the blood draw, was 9.8, a level that corresponds with an average blood glucose level of 235. (Ex. A at 14.) His levels have been that poor for at least the past year. (Ex. B at 2 (previous quarterly tests with levels of 8.8, 8.3 & 8.6).) More recently, on August 4, 2020, his blood glucose level was measured within the normal range, but his hemoglobin A1c from the same blood draw was still 8.8, corresponding with an average blood glucose level over the previous two to three months of 206. (*See* Ex. E at 1-2.)

Defendant suffers from complications associated with uncontrolled diabetes. Most alarmingly, Defendant is suffering from Stage 4 Chronic Kidney disease and is

---

[1] All citations herein to Exhibits refer to those attached to Defendant's Motion.

in need of dialysis, or will be very soon. (Ex. A at 5 (referring to "stage IV kidney failure"); Ex. B at 1-2.) In April of this year, prison medical personnel recommended Defendant be immediately transferred to a facility where he could receive dialysis. (Ex. C at 4 ("Inmate requires dialysis and thus immediate transfer.").) However, he has not been transferred due to the ongoing COVID-19 pandemic. (*Id.* at 1 ("Due to COVID pandemic, there has been a delay in trans[f]er."). Even preparation for dialysis, placement of an arteriovenous fistula, or "AVF," has been delayed. (*Id.* (medical note from April 21, 2020 seeking "[u]rgent" consultation regarding "AV fistula procedure ASAP"); Ex. B at 6 (medical note from June 28, 2020 stating "Needs referral to Vasc[ular] Surg[eon] for AVF consideration/placement. Unfortunately, this will likely not happen given current COVID related issues with surg[ical] referrals.").)

Defendant also has diabetic retinopathy, a complication of diabetes threatening his sight by damaging blood vessels in his eyes. (Ex. E at 5-6.) He suffers from diabetic cellulitis, a bacterial infection common in diabetics. (Ex. B at 4, 6 (noting elevated white blood cell count (based on a June 24, 2020 blood draw) was likely due to cellulitis of his right leg).)

Defendant suffers from secondary hyperparathyroidism, where low calcium levels in the body are caused by disease. (Ex. B at 7.) He also suffers from gout, a form of arthritis common in diabetes. (Ex. H at 4.) Beyond these complications, Defendant suffers from hypertension, and his blood pressure is not well controlled. (Ex. A at 5 (151/92), Ex. B at 2 (143/90 & 153/94).) He also suffers from hyperlipidemia (high cholesterol), but his blood cholesterol levels were most recently measured within normal limits in March 2020. (Ex. A at 15-16.)

Because of Defendant's poor health, on July 28, 2020, the Warden of Defendant's facility recommended release. (Ex. A at 1-3.) The Warden wrote that Mr. Fernandez satisfied the criteria for "debilitated medical condition," based on his Stage IV kidney failure, diabetes type II, morbid obesity, hypertension, secondary

1  hyperthyroidism, and hyperlipidemia. (*Id.* at 1.) The Warden wrote: "Mr. Fernandez's
2  prognosis is poor, [and] he will soon suffer a significant disability in which his
3  continued incarceration will be difficult.  Also, based upon his medical diagnoses, he
4  is considered high-risk for COVID-19 mortality." (*Id.*)  The Warden's
5  recommendation was supported by Dr. Ford's report, who chronicled Defendant's
6  many health problems and noted that he was at high risk of dying if he contracted
7  COVID-19.  (*Id.* at 5-7.)

8       August 4, 2020, the Office of the General Counsel for the BOP reviewed the
9  Warden's recommendation and rejected it.  (Ex. G.)  General Counsel acknowledged
10 that Defendant "will likely require hemodialysis in the near future," and that "he is
11 pending a consult for arteriovenous (AV) fistula placement." (*Id.* at 2.)  But
12 ultimately, General Counsel rejected the Warden's recommendation, noting that
13 Defendant's medical conditions do not currently interfere with "activities of daily life"
14 and that he is "currently working" within the prison.  (*Id.*)  General Counsel either did
15 not know about or simply did not discuss the delays in transfer (and thus, delays in
16 receiving indicated medical treatment for near end-stage renal failure) as a result of
17 the COVID-19 pandemic.[2]  Moreover, General Counsel's rejection does not
18 acknowledge the grave risk to Defendant should he contract COVID-19. (*Cf.* Ex. A at
19 5 ("[Defendant] is considered a high risk for COVID-19 mortality in the future.").)

20 **II.   Standard**

21      The First Step Act permits an inmate who first exhausts certain administrative
22 remedies to seek compassionate release from the court that sentenced him.  18 U.S.C.

---

[2] Apparently, at least as of July 28, 2020, Defendant's need for dialysis was not an emergency.  It may not yet be an emergency.  The urgency of the need is described in the record as Defendant's needing dialysis "soon" or "imminently." (See Ex. A at 5-6.)  But Defendant's doctor has repeatedly expressed the current, urgent need to prepare for when Defendant's need for dialysis becomes an emergency.  (*See, e.g.*, Ex. B at 6 (medical note from June 28, 2020 stating that Defendant "[n]eeds to be transferred ASAP to a medical center or institution capable of providing [dialysis]."); Ex. C at 1 (medical note from Apr. 21, 2020 indicating the need for an "urgent" referral of Defendant for placement of AVF for dialysis); *id.* at 4 (medical note from April 8, 2020 stating that "Inmate requires dialysis and thus immediate transfer."); *id.* at 2 (medical note from March 11, 2020 (stating that Defendant needed referral for AVF placement and to be transferred).)

4

§ 3582(c)(1)(A). Specifically, the sentencing court may modify an inmate's sentence where (1) the inmate exhausts his administrative remedies (or after the passage of 30 days after receipt by the warden of an inmate's request); (2) the inmate establishes "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the proposed reduction is consistent with the applicable United States Sentencing Commission's Policy Statement. *Id.*

That Policy Statement, developed by the Sentencing Commission as required by 28 U.S.C. § 994(a)(2)(C), is found in the United States Sentencing Guidelines ("USSG"), § 1B1.13. In relevant part, the provision states:

> Upon motion . . . under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . (1)(A) [e]xtraordinary and compelling reasons warrant the reduction . . . ; (2) [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) [t]he reduction is consistent with this policy statement.

USSG § 1B1.13.

An inmate's health may constitute an "extraordinary and compelling reason" for release or reduction in sentence under the Policy Statement. *See id.* cmt. 1(A). This may be met where the inmate suffers from a terminal illness or, alternatively, where he suffers from "a serious physical or medical condition, . . . a serious functional or cognitive impairment, or [a] deteriorat[ion] of physical or mental health because of the aging process," and those condition(s) or that deterioration must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." *Id.* An inmate may also establish an

"extraordinary and compelling reason other than, or in combination with" his health.[3] *See id.* cmt. 1(D) ("other reasons" provision).

Relevant here, the § 3553(a) factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed . . . (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with . . . medical care." 18 U.S.C. § 3553(a). The § 3142(g) inquiry requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

### III. Discussion

#### A. Exhaustion Requirement

The parties agree Defendant has met the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). (*See* Mot. at 7.)

#### B. Extraordinary and Compelling Reason

The parties also agree that Defendant has established an extraordinary and compelling reason for sentence reduction. (*Id.*) The Court agrees.

Defendant seeks release based on the ongoing pandemic and his poor health. As a general matter, concerns regarding contracting COVID-19 while incarcerated do not justify an inmate's release or reduction in sentence. *See, e.g., United States v. Drobot*, Case No. 8:14-cr-00034-JLS (C.D. Cal. July 21, 2020) (Doc. 330); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that

---

[3] By its terms, Comment 1(D) requires that the "other reasons" must be as "determined by the Director of the Bureau of Prisons." However, the Policy Statement has not been revised since the First Step Act, which eliminated the requirement that Bureau of Prisons file a motion on behalf of an inmate. The Court has previously held that the passage of the First Step Act expanded the Court's discretion to include release under this "other reasons" provision of the Policy Statement. *See United States v. Battani*, Case No. 8:16-CR-00166-JLS (C.D. Cal., Sept. 3, 2020) (Doc. 47). Other courts are in accord. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the old policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BoP Director in evaluating motions by defendants for compassionate release."); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682-83 (N.D. Cal. 2019) (considering, but rejecting, an inmate's motion for compassionate release under the "other reasons" provision).

COVID-19 poses in the federal prison system, . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Franklin*, No. 07-CR-178 (JDB), 2020 WL 4049917, at *2 (D.D.C. July 20, 2020) (rejecting argument "that COVID-19 is by itself an 'extraordinary and compelling reason' warranting compassionate release"); *Briggs v. United States*, No. 4:17-CR-33, 2020 WL 4032136, at *2 (E.D. Va. July 16, 2020) (acknowledging "the magnitude of the COVID-19 pandemic and its effect on prisons," but nevertheless concluding that "the pandemic alone does not warrant compelling and extraordinary reasons for the release of all inmates"); *United States v. Wade*, No. 5:15-CR-00458-EJD-1, 2020 WL 3254422, at *2 (N.D. Cal. June 16, 2020) ("[G]eneralized concerns about COVID-19, without other factors showing present extraordinary and compelling reasons to warrant modification of a sentence and immediate release from custody, are insufficient.").

However, here, the Court determines that Defendant has established an extraordinary and compelling reason for a sentence reduction under the "other reasons" provision of the Policy Statement. Defendant's extremely poor health, and more specifically his near end-stage renal failure occasioned by his uncontrolled diabetes, together with both the BOP's apparent inability to transfer him (or surgically prepare him) for dialysis and the ongoing COVID-19 pandemic all combine to establish extraordinary and compelling reasons grounds for sentence reduction.

**C. Relevant § 3553(a) Factors and § 3142(g) Danger to the Community Inquiry**

The Court next considers the relevant § 3553(a) factors and whether Defendant is a danger to the community.

The § 3353(a) factors include consideration of Defendant's medical care. 18 U.S.C. § 3553(a)(2)(D). The delays in transferring Defendant to a facility where he can receive dialysis and in evaluating Defendant for AVF placement is deeply

troubling. The Court acknowledges that the BOP's actions as to the individual inmate in this case may be limited by its overarching need to implement measures to slow or stop transmission of the novel coronavirus; however, as a result of that overarching need, the need to provide medical care to Defendant in this case counsels in favor of reduction in sentence.

As for the nature and circumstances of Defendant's offense and his history and characteristics, Defendant's crime of conspiracy to distribute methamphetamine is a serious offense. However, Defendant's admitted role in the conspiracy was limited to the sale of less than 80 grams of methamphetamine (*see* PSR ¶¶ 23), a relatively small amount. And although Defendant's past includes a lengthy history of drug-related offenses, it also includes mitigating circumstances from Defendant's childhood and significant efforts by Defendant while incarcerated to find another way of life. (*See* PSR ¶ 90.) Specifically, after Defendant was arrested but before he pleaded guilty, Defendant completed his General Education Development (GED) degree. (*Id.*) Before he was sentenced, he completed classes on Habit Awareness, Learning Styles, Computers, Substance Abuse, and Breaking Barriers. (*Id.*) Since that time, according to the Warden, he has completed a 1,200-hour Electrical Apprenticeship. (Ex. A at 2.) On balance, these factors also counsel in favor of a reduction in sentence.

The final relevant § 3553(a) factor, "the need . . . to protect the public from further crimes of the defendant," overlaps significantly with the § 3142(g) inquiry that requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Here, Defendant has been incarcerated since early 2014. He had a significant methamphetamine addiction, using approximately 4 grams per day. (*See* Ex. A at 2 ("Mr. Fernandez self-reported a history of substance abuse beginning . . . at age 14 until his arrest.").) But the record is devoid of any suggestion that Defendant

has engaged in any drug activity while incarcerated;[4] instead, he has completed Drug Education and Non-Residential Drug Abuse Programs. (*Id.*) Additionally, none of Defendant's criminal convictions involved the threat of or use of violence, and there is no suggestion of gang affiliation in Defendant's record. (*See* PSR ¶¶ 46-68, 77.) On balance, therefore, the Court concludes that Defendant does not pose a danger to the community that cannot be addressed by terms of supervised release.

**IV.   Conclusion**

As set forth herein, and in the absence of opposition by the Government, the Court concludes that Defendant has met the requirements for compassionate release pursuant to 18 U.S.C. § 3582(a)(1)(C). Therefore, the Court hereby ORDERS:

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Pursuant to this authority, the Court imposes a new, additional term of supervised release to run through the unserved portion of defendant's original term of imprisonment, that is, to and including defendant's current calculated release date of June 14, 2025.

The terms of such supervised release shall be the same as the terms of supervised release specified in the August 28, 2015 Judgment and Commitment Order, with the exception that the following General Order shall apply: Amended General Order 20-04.

Before being released from BOP custody, defendant shall submit to a health screening by BOP and, if defendant is found to be exhibiting symptoms consistent with COVID-19 or he is confirmed to have COVID-19, the BOP shall inform the Court, and defendant shall not be released to the public absent further order of the Court.

During the period of supervised release, defendant shall comply with national,

---

[4] Indeed, in advocating for his release, the Warden's refers to only to "two low-level disciplinary infractions." (Ex. A at 2.)

state, and local public-health orders regarding COVID-19.

Upon completion of this term of supervised release, defendant shall serve the original term of supervised release specified in the August 25, 2015 Judgment and Commitment Order, with the exception that the following General Order shall apply: Amended General Order 20-04.

The BOP is ordered to effectuate a reduced sentence of imprisonment to TIME SERVED, which will be effective upon the next regular business day following the successful completion of the health screening described above.

**IT IS SO ORDERED.**

Dated: September 14, 2020



_____
The Hon. Josephine L. Staton
United States District Judge

**CC:**     **BOP**
           **USMS**
           **USPPO**

10